The Edison Electric Illuminating Company of New York, Respondent, v. William B. Riker, Appellant, Impleaded, etc.— Judgment affirmed, with costs.—

PER CURIAM: The evidence presented by this record is, with the exception of the testimony of one witness, substantially the same as in the case of *Comyns* v. *Riker*, which resulted in a judgment setting aside the transfer of certain property by William H. Riker to William B. Riker, on the ground that it was fraudulent and void as against the plaintiff, because made with intent on the part of the transferer to hinder, delay and defraud his creditors, and was accepted by the transferee with notice of such intent. This court on the appeal in *Comyns'* case affirmed the judgment (83 Hun, 473). On this review the evidence is substantially the same as in the *Comyns'* case, with the exception of the testimony of William H. Riker, the transferer, who was not sworn in that case, and we shall inquire whether a different result than was then had is now required because of it. The learned judge at Special Term thought not, and we see no reason to disagree with him. It was shown on the former trial that the father, William B. Riker, by mortgages upon his property, given at different times prior to October 2, 1891, obtained about $71,000, which was turned over to his son. And that the father transferred to his son his interest in the drug business, in December, 1887, for $60,000, for which six notes of $10,000 each were given. On account of these notes, and the moneys received from the mortgages, the son claims there was an indebtedness due to his father on February 12, 1892, of about $120,000, while the father claims the amount to have been $128,000. The fact that such moneys were turned over to the son, and the father's interest in the drug store transferred to him, were not in dispute on either trial, and to such extent the testimony of the son merely corroborates that of his father in the *Comyns'* case upon a point not disputed. The contention in that case was, as it is in this one, not that the father did not turn over the moneys to his son, but that he did not loan them to him. That instead, he intended them as a voluntary and absolute gift to his only child, and that it was only when the business failure of his son seemed imminent, that the plan developed of treating such gifts as advances and loans for the purpose of securing a foundation upon which to base a transfer of whatever of assets the son had remaining, at the expense of his other numerous creditors. In support of the contention of the plaintiff that the money was intended by the father as a gift to the son who succeeded him in business, it was proved that from the year 1878 to June 5, 1887, the father loaned to the son at various times, sums of money ranging from $200 to $4,400, aggregating $8,500. And that for each sum when loaned he took back the son's note. It was not until December 15, 1887, that the father executed a bill of sale to his son of his interest in the business carried on under the firm name of William B. Riker & Son, although he testifies that he had been previously out of the business: "I had nothing to do; my son did everything and took the entire profits for at least a year previous to my giving the bill of sale."

With this statement the son agrees. But after June, 1887, the former practice of the father in requiring the son to give him notes for moneys advanced was abandoned. According to the testimony of both father and son, the father borrowed $20,000 on mortgage in October, 1887, and immediately turned it over to the son. When paid to the son the money was all in bank notes, but the father did not take a note for it nor a receipt. This statement is not contradicted by the son on this trial, and the further fact appears that no record or entry of these transactions was made by either father or son. And in that important respect, the son's testimony strengthens the evidence of the former trial on this subject. Then it appeared that there were no entries in the business books of the son. Now it appears that he never made an entry anywhere of the transactions. What we have said as to the absence of a note, receipt or entry by either father or son as to the $20,000, is also true of the $5,000 turned over December 27, 1887; of the $8,000 on November 4, 1889, and the $14,000 paid over May 28, 1891. The father, in answer to an inquiry as to whether he kept any account between himself and son during this period of time, said: "As a general thing, I kept no account; I may have in these later years a few little memoranda, but I did not at the time that I loaned this large amount and down to the 12th of February, 1892, keep any account, not until the whole thing was paid." The date given by the witness was some little time after the last payment, which he now claims to have been a loan to his son. It also appears, from the testimony of the manager and bookkeeper of the wholesale firm, and from the testimony of the bookkeeper of the retail department, that the books contained no evidence of any of these transactions, and the son on this trial testified: "I did not keep any account in any book with my father; none whatever * * * I did not keep any account with him at all; I kept no entry of this indebtedness on any book." In such important respect, therefore, the son's testimony strengthens the evidence upon which the judgment was based in the *Comyns'* case. On that trial, it also appeared, from the testimony of a representative of Bradstreet's Commercial Agency, that in February, 1888, when, according to the father's testimony, the indebtedness of his son to him was $93,500, the son stated that his total indebtedness consisted of a debt due the Sixth avenue store of from $6,000 to $8,000, and on the factory account of $15,000. On this trial, William H. Riker admits that he did make that statement. There are other features of the testimony, such as a failure at any time to demand payment by the father; the omission to pay interest; the swearing off of his personal assessment by William B. Riker, and his testimony in relation to it, in which he said: "I did swear off that I was not liable to personal tax, because what my son owed me I did not look upon in the light of a debt; I did not think of it; it was a different kind of a debt." But such evidence, and the weight to be attached to it, was considered by us in the *Comyns'* case, leaving for consideration here whether the testimony of William H. Riker so far overcomes the evidence in the *Comyns'* case as to require a different conclusion. Our examination of it, to which brief reference only has been made, satisfies us that it is not of such a character as to justify this court in holding that the decision of the Special Term was against the weight of evidence. The judgment should be af-

firmed, with costs. Present — Van Brunt, P. J., O'Brien and Parker, JJ.